JOSEPH R. JONES

*v.*

JAMES McGUIRK.

1. PRACTICE—*objection for want of proof—when to be taken.* In an action against an officer to recover for damage to property while in his custody and by reason of his neglect, he can not object for the first time in the appellate court that there was no proof of his official character at the time. The objection should first be made in the court below, so as to give an opportunity to obviate it by proof.

2. UNITED STATES MARSHAL—*his duty and liability in respect to property in his custody.* When a United States Marshal takes property into his custody under a process *in rem* issued out of an admiralty court, he becomes thenceforth chargeable with its safe keeping; it is his duty to use due diligence to keep the property safely, and he will be liable to the owner for any damage to the property resulting from a want of such diligence.

3. So where a marshal seized and took into his custody, under such a process, a steam tug, which he put in charge of a custodian, and while so situated the tug sprung a leak and sunk, for want of proper care and attention on the part of the custodian, it was held that the marshal was liable to the owner for the damage occasioned thereby.

4. The property being thus in the custody of the marshal, the owner is relieved of all concern about it, and is not required to be present to protect it. The sole responsibility of its safe-keeping is upon the officer.

5. DUE DILIGENCE—*in such case.* Due diligence is understood to be such as a careful, prudent man, of reasonable sense and judgment, might reasonably be expected to take if the property belonged to himself.

6. In such a case as this, the officer should know whether the vessel leaked; whether the place she occupied was a proper one; whether, in the removal of pipes, which were taken out by direction of the custodian, any holes had been left through which water might enter the vessel; what bad effect ice might have upon her which might be avoided, it being in the winter season; and what would be her condition in case of a sudden rise of water and breaking up of the ice.

APPEAL from the Superior Court of Chicago; the Hon. WILLIAM A. PORTER, Judge, presiding.

The opinion of the court contains a sufficient statement of the case.

Messrs. SLEEPER, WHITON & DURHAM, for the appellant.

Where a defendant, whose property has been levied upon by an officer, is not deprived of the possession or control of it —he must himself take the necessary care of it to preserve it from destruction or damage. *Sewall* v. *Mattoon,* 9 Mass. 535; *Tyler* v. *Uhner,* 12 Mass. 162.

Under the circumstances, the marshal was no more liable than if he had left the vessel in the hands of a receiptor, who is always held the agent of the debtor and not the officer. *Browning* v. *Hanford,* 5 Hill 588, and 5 Denio 595; *Phelps*

v. *Campbell*, 1 Pick. 58 ; *Green* v. *Burke*, 23 Wend. 490 ; *Peck* v. *Tiffany*, 2 Coms. 451 ; *Jenner* v. *Joliffe*, 6 Johns. 9.

Mr. WILLIAM H. COUDON, for the appellee.

The marshal is liable for every loss occasioned by his misconduct or negligence. *Grinnell* v. *Phillips*, 1 Mass. 530 ; *Burke* v. *Trewitt*, 1 Mason 96 ; *Campbell* v. *Phelps*, 17 Mass. 245 ; *Hazard* v. *Israel*, 1 Binn., 240 ; *McIntyre* v. *Trumbull*, 7 John. 35 ; *Keith* v. *Howard*, 24 Pick. 292 ; *Abbott* v. *Kimball*, 19 Vermont 551 ; *Moore* v. *Westervelt*, 21 N. Y. 103 ; *Same*, 27 N. Y. 234 ; *Van Antwerp* v. *Newman*, 2 Cowen 543 ; *Jenner* v. *Joliffe*, 9 Johns. R. 381.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action on the case, brought to the Superior Court of Chicago, by James McGuirk, against Joseph R. Jones, to recover damages for negligence in regard to a steam tug called "Ada Allen," which he, as Marshal of the United States for the Northern District of this State, had attached on process issued out of that court, in a case in admiralty, in which John Rigg was libellant, and this tug defendant.

The jury found for the plaintiff, and assessed the damages at $1,375, for which the court rendered judgment; and to reverse which this appeal is taken.

The declaration alleges, that appellant was, on the 22d day of November, 1866, the Marshal of the United States for the Northern District of Illinois, and, as such, seized, attached, arrested, and took possession of this tug, owned by appellee, and retained possession until she was bonded out of the marshal's custody; that it was appellant's duty, as marshal, in consideration of the emoluments of his office, to use great

care, skill and attention in the protection and preservation of the tug, against dangers, damage and deterioration, &c., but by his negligence, &c., the tug, in the month of February, 1867, and while in appellant's possession, as marshal, became filled with water, and sunk in the Chicago river, and was left there by appellant, two months, and until she was raised by appellee, and bonded; claiming damages by reason of injuries thereby occasioned to the tug, and for depriving him of the use for two months, and prevented thereby from making gains and profits, and for his expenses incurred in repairing the injuries done.

The process which issued out of the district court was in a proceeding *in rem*, against the vessel, and commanded the marshal to attach her, together with her tackle, apparel, &c., and detain her in custody until the further order of the court, and to give notice to all persons claiming her, &c.

The return to the process, that he had executed the writ by attaching the tug, her tackle, apparel and furniture, &c., on the 22d day of November, 1866, and still detained the same in his custody, was made on the 4th day of February, 1867, and was signed, "J. R. Jones, U. S. Marshal, A. E. Cotes, Deputy."

The first point appellant makes, is the want of proof that he was marshal at the time, and that Cotes was his deputy. A sufficient answer to this is, that this point was not made in the court below. The case proceeded to judgment on the fact that appellant was marshal, his official character not having been called in question. Had it been, the proof could easily have been made, that he was, at the time, acting as such, and that Cotes was acting as his deputy. There was no pretense that these persons were not the officers the papers from the district court, and in evidence, represented them to have been at the time the writ was issued, executed and returned. In addition to these papers, the bond of appellee was put in evidence, which had been approved by the district court, dated May 28, 1867, for the purpose of releasing the

25—51ST ILL.

vessel, which recites that Cotes had executed the writ as one of the deputies of the marshal.

The process under which the marshal acted was *in rem*, which is founded on a right in the thing, and the object of the process is to obtain the thing itself, or a satisfaction out of it for some claim resting on a real or *quasi* proprietary right in it, and a court of admiralty, through its process, arrests the thing for the purposes of satisfaction. It holds its possession by its officers, and the property, in contemplation of law, is in the custody of the court itself.

The proceeding is based on the assumption that the owners and other persons interested in the property, have it in their own charge, or have placed it under the control of others, who will see to their interests, whenever process shall be served upon it. The process commands the marshal to notify all parties. It is his duty, therefore, to make the service openly; to leave a written notice with the person in possession, and to exercise his acts of custody and control in such an open and visible manner, by a custodian, or otherwise, that the person having the same in charge may take the necessary steps to protect the rights of all those interested. Was not this duty performed by appellant?

It is true, as appellee testified, he did not see the marshal at all, nor was it necessary he should have seen him. The process was not against appellee, but against the tug. All that was necessary was, that the marshal should attach it; and this he could do without seeing it or touching it. His duty was performed by taking it into his custody, not *manu forti*, but by placing some person in charge, and making a return on the writ. The marshal becomes, thenceforth, chargeable with its safe keeping. Conk. Tr. 361. Gilbert was found in charge, giving directions about moving certain articles from it, and it is a fair inference he was put in charge by the marshal. To overcome this presumption, how easy was it for appellant to have called Gilbert. Besides, the return shows appellant had

taken the vessel in his custody; and fees are chargeable for it, which will, no doubt, appear in the cost bill which may be issued on the determination of the cause in the district court. The return shows the tug was in appellant's custody on the 4th of February, 1867, which was manifested in an open, visible manner, by a custodian.

But appellant insists, as the vessel was not moved from the dock where her owner had placed her, and he removed the furniture, the steam and other pipes, and the bedding, that is evidence she was in his care all the time. The testimony is, that these things were removed by direction of the custodian, and deposited in the hold of a barque moored alongside, in which the custodian lived.

What, then, was the legal duty of appellant, he having this boat in his custody? The office of marshal is one of great trust, and he is clothed with vast powers for good or for evil, and public policy, if no other consideration, requires he should be responsible for all the injury he may do in his office. If the injury proceeds from an act of a deputy, or other person assisting him in the performance of his duty, the marshal alone is immediately responsible to the injured party.

It was the duty of the marshal, then, to use due diligence to keep this vessel safely. *Eames* v. *Hennessy*, 22 Ill. 628. Due diligence is understood to be such as a careful, prudent man, of reasonable sense and judgment, well acquainted with the condition of his property, might reasonably be expected to take if the vessel belonged to himself. He should know whether she leaked; whether the place she occupied was a proper one; whether, in the removal of the pipes, any holes had been left open through which water might enter the vessel; what bad effect ice might have upon her which might be avoided; what would be her condition in case of a sudden rise of water and breaking up of the ice.

That no care whatever was bestowed upon this boat is shown by all the testimony. She went down gradually—was three days sinking, upon any one of which, one man, with a common

tin pump, could have relieved her in a few hours, as she could have been bailed out in a short time. A passer by, seeing her condition, said to a man there, " She has sprung a leak," and the reply was, he thought she had. Whether this was the custodian or not, does not appear, but some one should have been there, representing the marshal, to know her condition and guard against accidents, and with an eye to her protection and safety.

The case is not at all like ordinary cases of a levy upon personal property by a sheriff or constable, or process in a personal action. Hence the law required the marshal to take the property into his custody. Failing to do so, or to appoint a fit custodian, he must be responsible for the consequences.

The appellant insists, that if he is responsible at all it is to the libellant, and not to the owner. This proposition is too absurd to require refutation. He was bound to both.

But it is said, appellee had no right to leave his vessel and go to Ohio, after she was attached—he was bound to be there to protect her. We have shown the boat was in the custody of the marshal, and being so, the owner was relieved from all concern about her. It was his good fortune, perhaps, that the boat was in custody during the winter months, when she could not be used, and under the responsibility of the marshal.

But if the libellant did not wish to run the hazard of a loss to himself, by reason of the decay or liability to injury of the boat, as a court of admiralty is always open, that court would, no doubt, on his application, have ordered a sale of the vessel, the proceeds thereof to be brought into court to abide the event of the suit. These proceeds would become the substitute of the thing itself. But this, in no degree, relieves the officer of the liability imposed upon him by law to use due diligence to preserve the property.

We will not discuss the instructions, passing them by with the remark, they were correctly disposed of by the court.

The question of reasonable care and diligence was fairly submitted to the jury under them, and the evidence sustains the verdict.

Much has been said about the process of salting vessels, and the expense attending it.

The evidence is, this boat was salted when built, which was but a few months before she sunk ; that she cost $10,000 ; that her hull and all her parts were staunch and sound; that she could earn, in towing, from forty-five to fifty dollars a day ; that, from experiments made, the salt had been worked out of her while she was submerged, before it could have taken much effect upon the timbers ; that to re-salt her, her sides, planking, or some of it, would have to be stripped, and the cost would be heavy; and that salt tends to preserve the timbers.

Taking into consideration the expense of raising the boat, cleaning her, refitting her, the loss of her salting, the loss of her services for two months at least, the verdict is not too much, and might well have been more.

The judgment must be affirmed.

*Judgment affirmed.*